UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JEFFREY PETER DATTO,

    Plaintiff,

                                                  Case No.: 18-21053-CIV-GAYLES

v.

ASSOCIATION OF AMERICAN
MEDICAL COLLEGES *et. al.*,

    Defendants.
_____/

## RESPONSE OF DEFENDANTS, THE UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, THE OHIO STATE UNIVERSITY AND THE UNIVERSITY OF MIAMI, IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, The University of Central Florida Board of Trustees ("UCF"), The Ohio State University ("OSU") and The University of Miami ("UM") (collectively the "Universities"), by and through their undersigned counsel, hereby respond in opposition to the Motion for Preliminary Injunction [D.E. 63] (the "Motion"), filed by Plaintiff, Jeffrey Peter Datto ("Datto").

## BACKGROUND

At some unspecified point between 2014 and the filing of this lawsuit, Jeffrey Datto applied for admission to the medical schools of twenty universities, including those of Drexel University, Temple University, OSU, Loma Linda University, UCF, and UM,[1] through a centralized application service maintained by Defendant, Association of American Medical Colleges. (*Id*.) Datto then completed a secondary admissions application for each individual medical school. (D.E.

---

[1] The Complaint is unclear as to whether Datto applied to medical school at Geisinger Health System.

1

62, ¶¶ 93-94.) Most of the universities did not offer Datto an admissions interview and none of the medical schools that are parties to this lawsuit offered him admission. (D.E.62, ¶ 95.)

At some undefined time in the past, Datto attended Thomas Jefferson University as a MD/PhD student. (D.E. 62, ¶ 61.) He previously filed a lawsuit against Thomas Jefferson University, alleging discrimination under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, claiming that Thomas Jefferson University perceived him as having Bipolar Disorder. (D.E. 62, ¶¶ 63, 155, 164, 175.)

Datto accuses the university Defendants of denying him admission for one of two reasons: (1) in retaliation for his previous lawsuit against Thomas Jefferson University; or (2) solely due to a perceived disability. (D.E. 62, ¶ 155.)

Against all of the Defendants, Datto purports to assert claims for violation of the Rehabilitation Act (Counts IV and V) and violation of Title V of the ADA (Count VI). He also purports to assert claims against various defendants for breach of contract (Count I), violation of Title II of the ADA (Count II), violation of Title III of the ADA (Count III), violation of the Florida Civil Rights Act (Count VII), and for intentional infliction of emotional distress (Count VIII).

For reasons that are not readily apparent, Datto also has filed a motion for preliminary injunction against three Defendants - - UCF, OSU and UM. Although the Motion fails to set forth the relief Datto seeks in connection with his Motion, Datto has submitted a proposed order that indicates he is requesting that the Court require that UCF, OSU and UM provide him with a list of admissions criteria, that, if met, will result in his admission to their medical school programs. [D.E. 63-1]. For the reasons stated below, Datto's Motion should be denied. Datto's Motion fails to satisfy the elements required for injunctive relief and, as a matter of law, the Court may not properly provide the particular relief sought.

Further, even if Datto's Motion had merit, this Court should decline to enter a preliminary injunction against UCF, OSU, and UM because Datto's claims should be dismissed for a variety of reasons, including that he has improperly joined all of the defendants in this action and cannot satisfy the requirements of Fed. R. Civ. P. 20 and 21. The claims in Datto's pleadings and his requests for a preliminary injunction against UCF, OSU, and UM and the other defendants in this action are based on unique, individualized factual circumstances that do not belong in the same discovery or trial setting. These arguments will be set forth in more detail in the Universities' forthcoming joint motion to dismiss Datto's Amended Complaint, which is incorporated herein to the extent applicable.

Similarly, this Court should decline to enter a preliminary injunction against OSU and UCF for the additional reason that Datto has filed this action in the wrong venue and, thus, claims against those defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3). For example, and as set forth in the Defendants' forthcoming joint motion to dismiss Datto's Amended Complaint, UCF may only be sued in the Middle District of Florida, and OSU may only be sued in Ohio. Therefore, it would be improper for this Court to enter a preliminary injunction against those defendants. These venue arguments will be set forth in more detail in the Universities' forthcoming joint motion to dismiss Datto's Amended Complaint, which is incorporated herein to the extent applicable.

Additionally, this Court should decline to enter a preliminary injunction against OSU because the Court lacks personal jurisdiction over OSU, and Datto has failed to state a cause of action against OSU. OSU raised these issues in response to Datto's original complaint, and hereby raises and preserves these issues, and incorporates by reference its applicable arguments raised in

its motion to dismiss filed on August 23, 2018 [D.E. 55]. OSU will set forth in more detail its arguments in its forthcoming joint motion to dismiss Datto's Amended Complaint.

Since this Court must resolve questions related to misjoinder, venue, personal jurisdiction, and whether Datto has stated a cause of action on any of his claims against the Universities, the Universities respectfully request that this Court refrain from granting Datto's requested relief or scheduling an evidentiary hearing until the arguments set forth in the Universities' forthcoming joint motion to dismiss are resolved. Finally, in the event this Court is inclined to grant Datto the relief he seeks, this Court may not issue a preliminary injunction unless Datto gives security in an amount that the Court considers proper to pay the costs and damages sustained by the Universities if it is ultimately determined that they have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c). The Universities respectfully request that such bond be sufficient to cover their costs and attorneys' fees incurred in connection with Datto's request for a preliminary injunction, which may include an evidentiary hearing and substantial time and effort and expense, in an amount no less than $100,000.00.

## ARGUMENT

### A.    The Movant's Burden When Requesting Preliminary Injunctive Relief

Datto's Motion for Preliminary Injunction is plainly deficient. To prevail on a motion for preliminary injunction, the moving party must establish that: (1) there is a substantial likelihood of success on the merits of the claim; (2) the plaintiff will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant as a result of the injunction; and (4) granting the injunction would not be adverse to the public interest. *See Pharm. Research & Mfr. of Am. v. Walsh,* 538 U.S. 644, 662, 671 (2003); *Parker v. State Bd. of Pardons & Paroles,* 275 F.3d 1032, 1034 (11th Cir. 2001); *U.S. v. Jefferson*

*County,* 720 F.2d 1511, 1519 (11th Cir. 1983); *Daniels v. Sch. Bd. of Brevard County, Fla.,* 985 F. Supp. 1458, 1459 (M.D. Fla. 1997); *Corley v. City of Jacksonville,* 506 F. Supp. 528, 534 (M.D. Fla. 1981); *One World One Family Now v. City of Key West,* 152 F. Supp. 2d 1352, 1353-54 (S.D. Fla. 2001).

A preliminary injunction is an "extraordinary and drastic remedy" not to be granted unless the plaintiff "clearly establishes" each of the four elements. *Jefferson County,* 720 F.2d at 1519; *One World One Family Now,* 152 F. Supp. 2d at 1354. "In issuing a preliminary injunction, the Court is exercising a very far reaching power which should never be indulged except in a case clearly warranting it." *Lee v. Resor,* 348 F. Supp. 389, 392 (M.D. Fla. 1972). The burden of persuasion as to all four elements of a preliminary injunction is at all times upon the moving party. *Jefferson County*, 720 F.2d at 1519. If the moving party does not carry its burden with respect to any one of the four elements, the motion for preliminary injunction must be denied. *Jefferson County*, 720 F.2d at 1519; *St. Johns Riverkeeper, Inc. v. United States Army Corps of Engineers*, 304 F. Supp. 3d 1229, 1247 (M.D. Fla. 2018) ("The failure to establish an element, such as a substantial likelihood of success on the merits, will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the remaining elements.").

      **B.**     **No Evidentiary Hearing is Required at this Time.**

While factual and evidentiary issues raised in a motion for preliminary injunction are usually resolved at evidentiary hearings, an evidentiary hearing is not required in this case because material facts are not in dispute, and any alleged disputed facts are not material to the resolution of the preliminary injunction motion. See *Lifted Research Grp., Inc. v. Bbhats.net*, No. 13-62086-CIV, 2013 WL 12087218, at *3 (S.D. Fla. Nov. 15, 2013) ("It is only those cases where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief

should issue, [that] an evidentiary hearing must be held.") (internal quotations omitted); see also *Areal Plus Grp. v. Fisher Island Invs., Inc.*, No. 14-cv-20310, 2014 WL 12535947, at *7 (S.D. Fla. Sept 30, 2014); and *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312-1313 (11th Cir. 1998). This Court can reject Datto's Motion based on misjoinder, improper venue, and/or lack of personal jurisdiction without determining issues of disputed fact, since the Universities prevailing on any of those arguments would render the entry of a preliminary injunction improper. Even if those arguments were insufficient, Datto's Motion for Preliminary Injunction is deficient on its face as set forth below.

### C. Datto Has Not Met and Cannot Meet His Burden

Datto has plainly failed to meet his burden of persuasion nor can he do so. Datto's Motion fails to establish any of the four required elements necessary to issuance of a preliminary injunction. Datto's Motion mentions two issues: 1) the circumstances surrounding his filing of a similar motion for preliminary injunction against Thomas Jefferson University after he was dismissed from its medical school; and 2) the circumstances surrounding his applications to and denials from the Defendant Universities' medical school programs.

Datto's discussion of the motion for preliminary injunction filed in his case against Thomas Jefferson University is completely irrelevant to this action and has no bearing on the four elements required for the entry of a preliminary injunction against UCF, OSU or UM. Further, the mere allegations that Datto applied to and was denied admission to the Universities' medical school programs fails to form a basis from which the court can determine whether an injunction should be entered.

### 1. Datto Cannot Establish a Substantial Likelihood of Success on the Merits

The threshold issue to be determined by the Court is whether Datto is substantially likely to succeed on the merits of his claims. "Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits." *Ecometry Corp. v. Profit Center Software, Inc.,* No. 06-80083-Civ-Hurley, 2006 WL8435440, at *4 (S.D. Fla. June 21, 2006). "If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Cure, Inc. v. 1-800 Contacts, Inc.,* 299 F. 3d 1242, 1247 (11th Cir. 2002). Here, for all of the reasons set forth in the Universities' forthcoming motion to dismiss Datto's Amended Complaint, it is clear that Datto is unlikely to succeed on the merits of his claims. In addition, the policy against judicial interference in academic decisions such as the ones about which Datto complains mandates that the Motion be denied.

Courts throughout the nation firmly have established a judicial standard of the utmost deference applicable to purely academic decisions of institutions of higher education, particularly in the health care field. *See Militana v. Univ. of Miami,* 236 So. 2d 162, 163 (Fla. 3d DCA 1970); *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 343 (Fla. 4th DCA 2008); *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013). In such circumstances, the courts have adopted a policy against judicial intervention in such decisions, absent compelling evidence that the decision was arbitrary, capricious and/or in bad faith.

In *Militana v. Univ. of Miami,* a medical student brought an action for a mandatory injunction to compel the University of Miami to issue him a degree of Doctor of Medicine. The

trial court dismissed the case and the appellate court affirmed. The Third District Court of Appeal explained, in pertinent part:

> On the question of determining whether a student has failed to meet the academic requirements of a school, there is a wide discretion permitted by school authorities, and courts will not interfere, unless the school authorities are shown to have acted in bad faith or exercised their discretion arbitrarily.

236 So. 2d 162 at 164.

The same standard of deference to which a reviewing court should adhere in a situation such as that presented in this case was articulated by the United States Supreme Court in *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985). In *Ewing,* a student who had been dismissed from medical school brought an action, contending that he had been deprived of a property interest without due process of law. The appellate court held that the student's constitutional rights had been violated and the United States Supreme Court disagreed. The Supreme Court noted:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. … Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.

474 U.S. at 226. The Supreme Court further noted that the courts are not "suited to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions – decisions that require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial administrative decision making.'" 474 U.S. at 226 (quoting *Board of Curators, Univ. of Mo., v. Horowitz,* 435 U.S. 78, 89-90 (1978)).

It is well established that the decision of whether a student is qualified to be a physician is an academic judgment, not a judicial one. *Jallali v. Nova Southeastern Univ., Inc.,* 992 So. 2d 338, 343 (Fla. 4th DCA 2008) (citing *Horowitz,* 435 U.S. at 90). *See also McCawley v. Universidad*

*Carlos Albizu, Inc.,* 461 F.Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("Courts are generally reluctant to interfere with or substitute their judgment regarding decisions of academic institutions to award degrees. Such decisions are afforded great deference and are generally not disturbed absent an abuse of discretion."); *Zimmeck v. Marshall Univ. Bd. of Gov.,* No. 15-1572, ___ Fed. Appx. ___, 2015 WL 8536880, at *1 (4th Cir., Dec. 11, 2015) (courts should defer to the university faculty's professional judgment); *Hajjar v. George Washington Univ.*, 37 F.Supp.3d 90, 117 (D.D.C. 2014) (judicial reluctance to intervene in academic decisions is based upon sound considerations of public policy); *Morris v. Yale Univ.,* No. NNHCV075011251S, 2012 WL 1959299, at *6 (Conn. May 7, 2012) ("The discretion of universities to make academic decisions concerning its students without judicial interference is widely recognized and predicated on sound policy."); *Doe v. Bd. of Regents, Univ. of Neb.,* 788 N.W.2d 264, 294 (Neb. 2010) ("As in *Horowitz,* this represents an academic judgment by school officials, officials who have expertise in evaluating whether Doe possessed the attributes necessary to adequately perform his clinical duties as a medical student.").

The policy of judicial deference applicable to academic decisions regarding competency to be awarded a medical degree applies equally to medical school admissions decisions. *Betts v. Rector & Visitors of Univ. Of Virginia*, 191 F.3d 447, *5 (4th Cir. 1999) ("Ordinarily, the determination to admit a student into a given academic program requires the expert evaluation of numerous factors that are not conducive to judicial decision-making."); *see also Bowers v. Bd. of Regents of the Univ. Sys. of Georgia*, 1:11-CV-228-ODE, 2012 WL 12893538, at *4 (N.D. Ga. Mar. 20, 2012) (the court should not intervene and require a medical school to consider certain MCAT scores when making an admissions decision); *McDonald v. Hogness*, 92 Wash. 2d 431, 451–52, 598 P.2d 707, 718–19 (1979) (finding that medical schools have "broad discretion in admission decisions and may use subjective, noncognitive criteria.")

Because Datto has not established and cannot establish that he is substantially likely to succeed on the merits of his claims in this action, that should end the inquiry with respect to his request for preliminary injunctive relief. The Motion should be denied on that basis alone. However, consideration of the remaining elements necessary to preliminary injunctive relief dictates denial of Datto's Motion as well.

### 2. Irreparable Harm / Balancing of the Harms

Datto's conclusory statement that he "faces irreparable harm if this preliminary injunction is not granted and the Defendants face no harm if the Court grants this motion"[2] by itself, is insufficient to demonstrate either the irreparable harm or balancing of harm elements, as this statement is not supported by any facts. The Universities' denials of Datto's applications do not constitute irreparable harm. Simply stated, denial of admission to medical school does not constitute irreparable harm. *Betts v. Rector & Visitors of Univ. of Virginia*, 939 F. Supp. 461, 465 (W.D. Va. 1996) (holding a delay in obtaining admission to medical school insufficient to warrant the entry of an injunction).

In *Betts*, a student was accepted to the University of Virginia's Medical School conditioned upon the satisfactory completion of a related Post-Baccalaureate program. *Id.* at 463. Selected students who met specific grading criteria were guaranteed admission to the medical school upon completion of the program. *Id.* The student failed to meet the established criteria, but was permitted to remain in the Post-Baccalaureate program if he met certain conditions, including, but not limited to, submitting himself to a special needs assessment. *Id.* After the student was diagnosed with a learning disability and was provided additional time on his exams, resulting in an increase in his grade point average, the school still denied him admission to medical school on the grounds that

---

[2] [D.E. 63 at ¶28].

his cumulative grade point average did not meet the established criteria. *Id.* at 464. Following the denial, the student filed an action for declaratory relief and requested that the court enter an injunction, forcing the school to admit him to the incoming medical school class. *Id.* In denying the student's motion for injunctive relief, the court found that delayed admission to medical school did not constitute irreparable harm. *Id.* at 455-56.

Here, the facts surrounding Datto's motion for injunctive relief are far less compelling than those of the student in *Betts*. Datto is not party to an agreement guaranteeing his admission to medical school with any of the Universities to which his Motion is directed. Indeed, Datto's Motion fails to include any discussion concerning irreparable harm at all. What is more, there are 141 medical schools in the United States[3] to which Datto may seek admission (and countless others outside of the United States). Denials of admission from three Universities could not possibly cause Datto to suffer irreparable injury.

3. **The Public Interest**

The judicial reluctance to intervene in a university's academic decisions, as discussed above, is based upon "sound considerations of public policy." *Alden,* 734 A.2d at 1109 (quoting *Olsson v. Board of Higher Ed.*, 49 N.Y.2d 408, 426 N.Y.S.2d 248, 402 N.E.2d 1150, 1153 (1980)). When a school issues a diploma to one of its students, it certifies to society that the student is well-versed in all of the knowledge and skills required by his or her chosen profession. *See id.* Thus, to ensure society's confidence in the qualifications of individuals who have graduated from a particular educational institution, "it is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis." *Id.*

---

[3] https://web.archive.org/web/20130812102623/https://www.aamc.org/about/medicalschools/.

This rule of judicial nonintervention is particularly appropriate in the health care field where the students who receive degrees will provide care to the public. *Alden v. Georgetown Univ.,* 734 A.2d 1103, 1109 (D.C. App. 1999) (internal quotations omitted)). The relief Datto seeks - - having the Court force an educational institution to admit a student into its medical school despite an academic decision on the part of the institution that the student does not meet applicable criteria- - would disserve the public interest. *See Burke v. Emory Univ.,* 177 Ga.App. 30, 338 S.E.2d 500, 501 (1985) (finding it particularly contrary to the public interest for the court to intervene in academic decisions where the students receiving degrees will provide care to the public).

## **CONCLUSION**

This Court must decline to enter a preliminary injunction against UCF, OSU, and UM because Datto's claims and these Defendants do not belong together in this Court. Datto has misjoined the Defendants, filed claims in the wrong venue, and seeks relief against defendants not subject to this Court's personal jurisdiction. Additionally, Datto's Complaint and Motion for Preliminary Injunction are facially deficient and do not support a finding that the Universities' decisions to deny Datto admission to their medical school programs were arbitrary, capricious and/or in bad faith. This is a showing that Datto has not made and that he cannot make. The Universities evaluated Datto's applications and made well-informed decisions based on a review of his application materials that he was not among the best candidates for their medical school programs. The Universities are experienced in evaluating applicants for admission to their schools. They are familiar with the characteristics present in the applications of successful medical students and future doctors. The Universities have a duty to the public to accept and award medical degrees to only the most qualified individuals who will render medical care to the public.

Datto's Motion is devoid of factual allegations and proof to support any of the requisite elements of the extraordinary remedy of preliminary injunctive relief. Thus, the Motion should be denied on its lack of merit without the need for an evidentiary hearing. In light of the weakness of Datto's claims and arguments for injunctive relief, any such relief contemplated by this Court should include a requirement of a substantial bond in an amount no less than $100,000.00.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com

*Attorneys for the University of Miami*

**MICHAEL DeWINE**
**ATTORNEY GENERAL OF OHIO**

By: s/ Javier A. Pacheco
Javier A. Pacheco/Florida Bar No.: 51368
Porter Wright Morris & Arthur LLP
9132 Strada Place, Third Floor
Naples, FL 34108
Telephone: (239) 593-2968
Facsimile: (239) 593-2990
jpacheco@porterwright.com

*Special Counsel for Defendant*
*The Ohio State University*

**O'CONNOR & O'CONNOR, LLC**
800 N. Magnolia Avenue, Suite 1350
Orlando, Florida 32803
Telephone: (407) 843-2100
Facsimile: (407) 843-2061

*By: s/Derek J. Angell*
Derek J. Angell
Florida Bar No.: 73449
dangell@oconlaw.com
Ronald L. Harrop
Florida Bar No.: 260584
rharrop@oconlaw.com

*Attorneys for Defendant*
*University of Central Florida*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served this 16th day of November, 2018, via CM/ECF upon all parties authorized to receive service via CM/ECF and via e-mail and U.S. mail upon Jeffrey Peter Datto, *pro se*, 3352 W. 98th Place, Hialeah, Florida 33018, jpdatto@gmail.com.

By: /s/ Eric D. Isicoff
Eric D. Isicoff