UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEFFREY PETER DATTO, Ph.D.,

    Plaintiff,

v.    CASE NO.: 6:19-cv-1456-Orl-41EJK

THE UNIVERSITY OF CENTRAL
FLORIDA BOARD OF TRUSTEES,
JOHN DOES 1 – 5,

    Defendants.
_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

Defendant, UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES ("UCF"), by and through its undersigned counsel, and pursuant to the provisions of Rule 8(a)(2) and Rule 12(b)(6), Federal Rules of Civil Procedure, moves to dismiss Plaintiff, JEFFREY PETER DATTO, Ph. D.'s Third Amended Complaint (Doc. 236) and in support thereof state:

1. Although more concise than previous iterations, Plaintiff's Third Amended Complaint ("Third Complaint") nevertheless fails to set-forth "a short and plain statement" establishing cognizable claims under the Americans With Disabilities Act, 42 U.S.C. § 1201 *et seq.* ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act") based upon Plaintiff's failure to gain admission to UCF's medical school.  Counts I and II are claims under the ADA and Rehab Act alleging disparate treatment, Counts III and IV are claims under the ADA and Rehab Act for failure to accommodate a disability, Counts V is a claim for retaliation under the Rehab Act, and Count VI purports to allege an ADA claim against five unidentified "John Doe" defendants.

2. Count I of the Third Complaint contains 51 paragraphs, 40 of which are incorporated by reference in Count II. (Doc. 236, ¶ 57). Despite the number of allegations, Counts I and II fail to allege, in any logical or chronological sequence, the pertinent facts relating to Plaintiff's medical school admission process. These paragraphs relate a series of events beginning as early as May 21, 2003, or perhaps earlier, and describe undated events and circumstances which may either pre- or post-date Plaintiff's UCF admission process.

3. Count I and II are completely silent as to basic facts such as: (1) when Plaintiff applied for UCF medical school admission, (2) what information accompanied his admission applications, (3) what information, if any, was submitted to UCF concerning his alleged disability during the admission process, and (4) what information was submitted during the admission process concerning Plaintiff's former matriculation at Thomas Jefferson University ("TJU"). Count V suggests that Plaintiff submitted multiple applications for admission to UCF, but Count I thought IV are silent on the matter. Significantly too, Counts I and II fail to identify or describe any comparator to support the disparate treatment claims.

4. The failure to accommodate claims in Counts III and IV of the Third Complaint contain even fewer allegations concerning the UCF admission process. The substantive allegation of the failure to accommodate claims are contained in paragraphs 60 – 70 of Count III which are reiterated in Count IV. (Doc. 236, ¶ 76). While paragraphs 60 – 70 generally allege that Plaintiff was an applicant with a mental disability who required reasonable accommodation, Counts III and IV fail to allege material facts essential to an accommodation claim.

5. Counts III and IV fail to allege that Plaintiff was: (1) diagnosed with a disability, (2) when his disability diagnosis was made, (3) what (and when) facts and information concerning his alleged disability were disclosed to UCF, and (4) when (if ever) Plaintiff

requested an accommodation during the admission process. Counts III and IV thus fail to allege accommodation claims since they are devoid of any allegations which would "trigger" an obligation to offer an accommodation.

6. Paragraphs 67 and 68 of the Third Complaint identifies two (2) requested accommodations. Paragraph 67 refers to an accommodation to present "medical reports" establishing that his earlier dismissal from TJU medical school was the result of a disability. Paragraph 68 refers to a requested accommodation that UCF "honor" a "reinstatement contract" with TJU which included independent psychiatric clearance, an agreement that Plaintiff be "monitored" while attending medical school, and an agreement to put the diagnosis of bipolar disorder in some unidentified and undescribed "Dean's letter." These allegations fail to state any cognizable accommodation claim since the requested accommodations relate either to personal services or to accommodations which UCF had no obligation to provide.

7. Paragraphs 15 – 22 of the Third Complaint provide a candid description of Plaintiff's manic/depressive episodes which result from his "bipolar disorder of a variant thereof." (Doc. 236, ¶ 16). Plaintiff alleges that, despite the self-treatment described in paragraphs 24 – 26, he still has "recurring episodes, especially when he is placed in a very stressful position." (Doc. 236, ¶ 27). As a result, Plaintiff fails to allege that he is a "qualified individual", with or without accommodations, which is fatal to his ADA and Rehab Act claims.

8. Count V fails to allege a retaliation claim under the Rehab Act. Paragraphs 10 and 11 allege that (at some undisclosed time in the past), "a severe learning and thinking disability" resulted in his dismissed from the TJU medical school. Paragraphs 83 and 84 allege that Plaintiff disclosed his diagnosis of bipolar disorder in his initial UCF application and explained "the institutional action taken against him at TJU." Paragraph 103 alleges that

Plaintiff was subsequently informed that he was rejected again "due solely to what happened at TJU." However, nowhere in Count V is there any allegation that Plaintiff's UCF rejection was the result of the prior lawsuit against TJU as distinct from Plaintiff's inability and failure to complete the TJU curriculum.

9. Count VI of Plaintiff's Third Complaint purports to state an ADA retaliation claim against five unidentified "John Doe" defendants who allegedly participated in Plaintiff's UCF admission process. Count VI suffers from the same pleading defects as Count V and fails to otherwise alleged any cognizable claim against the unidentified "John Doe" defendants.

10. Plaintiff's Third Complaint fails to allege a claim for compensatory damages since it fails to alleged the requisite discriminatory intent or deliberate indifference necessary to support a compensatory damage claim.

WHEREFORE, for the reasons stated above and for the reasons more fully expressed in accompanying Memorandum of Law, Defendant, UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, respectfully requests that this Court enter an order dismissing Plaintiff's Third Amended Complaint, with prejudice.

## MEMORANDUM OF LAW

Defendant, UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES ("UCF"), submits this its Memorandum of Law and in support of its Motion to Dismiss Plaintiff's Complaint:

### I. Rule 8(a)(2) and Rule 12(b)(6) Standards.

Fed. R. Civ. P. 8(a)(2) requires a "short and plain" statement of the facts. The Eleventh Circuit has long condemned complaints which fail, in one way or another, "to give the defendants adequate notice of the claims against them and the grounds upon which each claim

rests." *Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citations omitted). In deciding whether a complaint is plausible, the Court must interpret the complaint in a light most favorable to the non-moving party and accept factual allegations as true. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

## II.  Plaintiff's Claims Under the ADA and Rehab Act Should Be Analyzed Under the Same Legal Framework.

Claims under the ADA and Rehab Act are analyzed under the same framework. *See, Knowles v. Sherriff*, 460 Fed. Appx. 833, 835 (11th Cir. 2012); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (stating that the Rehab Act is governed by the same standards used in ADA cases). Thus, Plaintiff's disability discrimination claims under the ADA and Rehab Act will be addressed together.

## III. Counts I and II Fail to State Claims for Disparate Treatment Under the ADA and Rehab Act.

To establish a prima facie disability discrimination-claim under the ADA, the plaintiff must allege that he or she: (1) is disabled, (2) is a qualified individual, and (3) was subject to unlawful discrimination because of his or her disability. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citations omitted); *Trabulsy v. Polk Community College*, 210 W.L. 1837909, *2 (N.D. Fla. 2010) (citation omitted). Similarly, to state a claim under the Rehab Act, the plaintiff must allege that he or she: (1) is disabled, (2) is "otherwise qualified" for the program or activity, (3) was excluded from the program or activity solely because of the disability, and (4)

5

sought to use a program or activity that receives federal financial assistance. *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991).

As observed by Magistrate Judge Fleischer Luis in the June 8, 2019 Report and Recommendations, Plaintiff's prior Amended Complaint contained "competing allegations making it impossible to determine whether plaintiff alleges that he is in fact disabled, and if so, what his disability is. . ." (Doc. 168, p.18). Plaintiff's Third Complaint does not cure this pleading defect. For example, paragraph 16 of the Third Complaint offers no fewer than four alternative causes of his alleged disability: (1) bipolar disorder, (2) a "variant thereof", (3) hypomanic episodes which "may be" the result of lithium withdrawal syndrome, and (4) the permanent effects of chronic prolonged intermittent hypoxia. In an apparent attempt to avoid damaging his professional reputation, Plaintiff's pleading strategy appears to be designed to avoid an outright allegation that he suffers from bipolar disorder and to suggest that his disorder is due to psychiatric medications taken between May 2003 and the "summer 2006." (Doc. 238, ¶¶ 11-14).

To establish a disability discrimination claim, it is incumbent upon the plaintiff to identify a specific disability and allege that the defendant was placed on notice of the disability prior to the alleged discriminatory act. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996). A plaintiff cannot sustain a case of disability discrimination "without proof that an employer had actual or constructive knowledge of an applicant's disability." *Id.* (citations omitted).

The Third Complaint, in addition to failing to specifically identify Plaintiff's disability, also fails to allege: (1) what information was conveyed to UCF concerning Plaintiff's alleged

disability, and (2) when in the admission process such information was conveyed. While paragraphs 18 – 23 of the Third Complaint contained detailed allegations concerning Plaintiff's depressed and manic states, Counts I and II are completely devoid of any allegations concerning what information, whether pertaining to his bipolar disorder, psychiatric medications, depressed state, excessive or inadequate sleep, distractibility and irritability were conveyed during the admission process.  This is not surprising since Counts I and II are devoid of any detailed allegation whatsoever concerning the admission process.  Simply stated, Counts I and II fail to allege *what happened* during the admission process – the central issue in the case.

Because Counts I and II of the Third Complaint are devoid of any specific allegations concerning the medical school admission process, other defects are apparent.  The Third Complaint fails to adequately allege that Plaintiff was a "qualified individual" for UCF admission. While paragraphs 31 - 34 and 40 - 45 of the Third Complaint tout Datto's academic record, the complaint fails to allege how these *past* accomplishments translate to *future* success in medical school given his admitted failure to complete the TJU curriculum.

Whatever the cause of Plaintiff's disabilities, the Third Complaint clearly acknowledges that despite his efforts "to better manage his disability," he still has "recurring" manic/depressive episodes especially when placed in "a very stressful position." (Doc. 236, ¶¶ 23-27).  Plaintiff candidly admits that when he is in a "depressive phase" of his illness his ability to learn, think and concentrate is "substantially limited." (Doc. 236 ¶ 17).  When in a depressed state, Plaintiff sleeps excessively, it is difficult for him get out of bed, he does not want to be around other and "it if difficult for him to hold a conversation."  *Id.* ¶ 18-19.  When is a manic state, Plaintiff sleeps for only 2 hours a night, find it difficult to concentrate on what people are saying to him, has racing thoughts and is "easily distracted." *Id.* ¶ 21.  While Plaintiff alleges that "reflection,"

prayer, vitamins, fish oil and baths at night help him control his disability, he freely admits that "he still has recurring episodes, especially when he placed in a very stressful position . . ." *Id.* ¶¶ 23-27.

Respectfully, these allegations, far from alleging that Plaintiff was a "qualified individual," demonstrate Plaintiff's *lack* of qualifications. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 42 U.S. 397, 406 (1979). "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of South Florida Bd. Of Trustees,* 749 Fed. Appx. 776, 781 (11th Cir. 2018) (citations omitted).

Plaintiff's failure to allege that he is a qualified individual is not cured by the conclusory allegations that he can perform the "essential functions of a medical student" if "given reasonable minimal accommodations." (Doc. 236, ¶¶ 35-36). Paragraph 49 vaguely alleges that Plaintiff will agree to "any treatment" (including 'pharmaceutical treatment') and "monitoring." However, no specific "treatment" is identified and no information is offered concerning the nature, degree or extent of the "monitoring" required for Plaintiff to successfully perform as a medical student. *See, Phillips v. Harbor Venice Management, LLC,* 2020 WL 495224, *3-4 (M.D. Fla. 2020) (Complaint for retaliation under the ADA dismissed where "it is unclear from the vague allegations in the complaint what specific reasonable accommodations [plaintiff] requested and when.")

As discussed in more detail in connection with Plaintiff's failure to accommodate claims, the plaintiff has the burden of identifying an accommodation and "demonstrating that it is

8

reasonable." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *Spears v. Creel*, 607 Fed. Appx. 943, 948 (11th Cir. 2015) ("The employee bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job." (citations omitted); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) ("[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual. . ."). Simply stated, Counts I and II fail to allege that, with or without accommodation, Plaintiff is able to meet the requirements of UCF's medical school curriculum. Given Plaintiff's acknowledgement of his recurrent depressive/manic episodes, his demonstrably vague references to "treatment" and "monitoring" accommodations, Plaintiff fails to allege that he is a qualified individual.

Plaintiff describes Counts I and II as "disparate treatment" claims under the ADA and Rehab Act. To set-forth a disparate treatment discrimination claim, a plaintiff must identify a specific comparator and alleged facts showing that the claimant and his comparator "are similarly situated in all relevant aspects." *Word v. AT&T*, 576 Fed. Appx. 908, 914 (11th Cir. 2014) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). A proffered comparator "must be nearly identical to the plaintiff." *Woods v. Cent. Fellowship Christian Acad.*, 545 Fed. Appx. 939, 945 (11th Cir. 2000). Here, the Third Complaint makes no attempt to identify a specific comparator. In the context of Plaintiff's discrimination claim, a comparator would, at the very least, be some other individual, with a disability, who gained admission to UCF's medical school. Here, however, the Third Complaint makes only a generalized and passing reference to the "general population." (Doc. 236, ¶ 15). The failure to identify a comparator is "fatal to establishing a prima facie case." *Corbin v. Town of Palm Beach*, 996 F. Supp. 2d 1275,

9

1285-86 (S.D. Fla. 2014) (citing *Silvera v. Orange Cty. School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

### IV. Counts III and IV Fail to State Claims for Failure to Accommodate Under the ADA and Rehab Act.

Counts III and IV of the Third Complaint purports to state claims for failure to accommodate under the ADA and the Rehab Act. Other than allegations regarding federal financial assistance, the Rehab Act claim in Count IV incorporates the same substantive allegations in the Count III ADA claim. (Doc. 236, ¶ 76). However, Counts III and IV *do not* incorporate any of the allegations of Counts I and II. Consequently, the allegations of Counts III and IV are even more sparse than the allegations of Counts I and II and suffer from the same pleading defects.

As with the earlier counts, Counts III and IV fail to provide any specific or meaningful allegations concerning *what happened* during the admission process. As with the preceding counts, there are no allegations concerning: (1) what information was provided to UCF concerning Datto's alleged disability, (2) when such information was provided, (3) what requests for accommodation were made, and (4) when the requests for accommodation made.

The "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999). *See also, Zainulabeddin,* 749 Fed. Appx. at 783-784 ("USF was not obligated to accommodate [the plaintiff] before she requested accommodations.") (citations omitted). Counts III and IV fail to alleged when in the admission process Plaintiff made his accommodation request. In conclusory fashion, paragraph 66 alleges that the Plaintiff "asked" for two "reasonable accommodations" but there are no allegations concerning when

these requests were made so that it is impossible to determine if the request were made *before* his application was rejected.

In addition, Counts III and IV fail to allege that the requested accommodations were "reasonable." The claimant has "the burden of identifying an accommodation and demonstrating that it is reasonable." *Frazier-White*, 818 F.3d at 1255 (citations omitted). Paragraphs 67 and 68 identify two requested accommodations. Paragraph 67 alleges that Plaintiff requested to present to UCF some unidentified "medical reports establishing that a disability affected his performance at the end of medical school resulting in his dismissal." Presumably, Plaintiff is referring to medical record generated prior to dismissal from TJU. In paragraph 68, Plaintiff alleges that, as a "reasonable accommodation," he asked UCF to "honor" a "reinstatement contract" with TJU which provided for an "independent psychiatric clearance," that Plaintiff be "monitored" as a medical student and that a diagnosis of bipolar disorder be included in some unidentified "Dean's letter." Neither paragraph 67 nor 68 allege any sort of "reasonable accommodation" that UCF was obligated to provide.

UCF's alleged failure to consider "additional medical reports" does not state an accommodation claim since there are no allegations: (1) concerning the content of these unidentified "medical reports" or (2) how the medical reports would have affected UCF's admission determination. The requested "accommodation" that UCF "honor" the TJU reinstatement contract" is even more problematic. With regard an "independent psychiatric clearance" there is no allegation that a psychiatric evaluation would have demonstrate Plaintiff's fitness as either a medical student or a medical doctor. The request that UCF allow Plaintiff to be "monitored" as a medical student is a request for a fundamental modification of the program and a request for personal service that UCF had no duty or obligation to provide.

"[F]undamental modifications in program requirements, the provision of services of a personal nature, or the provision of aids as services which will result in undo financial hardship or lowering program standards are not required" as accommodations. *Tips v. Regents of Texas Tech University*, 921 F. Supp. 1515, 1517 (N.D. Tx) (citing, *Southeastern Community College v. Davis*, 442 U.S. 397 at 407-12 (1979)). The Rehab Act "does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled person to participate." *Davis*, 442 U.S. at 405.

UCF is not required to provide any and all accommodations that Plaintiff might request. "[T]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (quoting *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 947 (N.D. Ga. 1995)). "Stated plainly, under the ADA, a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Stewart*, 117 F.3d 1286 (internal quotation marks omitted).

The decision in *Zainulabeddin v. University of South Florida Board of Trustees*, 749 Fed. Appx., 776 (11th Cir. 2018) is instructive. In *Zainulabeddin*, the Eleventh Circuit had under consideration the Rehab Act claim of a medical student dismissed from the University of South Florida who was diagnosed with ADHD and generalized anxiety disorder. *Id.* 778. The Court held that "USF was not required to make 'major adjustments' to its medical-doctor program to accommodate [plaintiff], by, for example, extending its normal maximum time limits to complete the program or altering its rules for students who fail an academic year." *Id.* at 784 (citations omitted). Plaintiff's requested accommodation that USF provide "monitoring" of his

12

medical school performance, in addition to being vague and uncertain, would constitute a "major adjustment" in the UCF program and hence fails to allege a "reasonable accommodation."

The suggestions that Plaintiff will agree to "any treatment" and "psychiatric clearance" (Doc. 236, ¶¶ 49, 68) amount to a request that UCF provide Plaintiff with medical or psychiatric evaluations or treatment. In *Stevens v. Rite-Aid Corp.*, 851 F.3d 224, 230 (2nd Cir. 2017), the Second Circuit rejected a claim that an employer had an obligation to provide desensitization therapy to a needle-phobic pharmacist holding that there was "no authority" to support a theory that "employers are obligated to offer employees' medical treatment as a reasonable accommodation under the ADA." *Id.* Research has revealed no authority for the proposition that the ADA or Rehab Act requires an employer or public university to provide medical care or evaluations as an accommodation.

In summary, Counts III and IV of the Third Complaint fail to allege sufficient ultimate facts establishing that UCF had an obligation or duty to offer Plaintiff a reasonable accommodation, and the reasonable accommodations alleged in paragraphs 49, 67 and 68 of the Third Complaint are either too vague or constitute matters relating to personal or medical services which do not, as a matter of law, constitute "reasonable" accommodation.

Significantly, Counts III and IV also fail to allege that if the suggested "accommodations" had been provided, that Plaintiff would be able to meet the "essential" requirements of a medical school curriculum. As stated, paragraphs 27 and 28 of the Third Complaint allege that Plaintiff "still has recurring episodes" of panic/depressive episodes. There is no allegation anywhere that if the requested accommodations set-forth in paragraphs 49, 67 or 68 are afforded, that Plaintiff's manic/depressive episodes would cease or would otherwise enable him to complete UCF's medical school curriculum.

### V. Count V Fails to State a Claim for Retaliation Under the ADA.

To establish a prima facie case of retaliation under the ADA, a plaintiff must allege: "(1) that he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relationship between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). "The third element requires a showing of but-for-causation." *Frazier-White*, 818 F.3d at 1258 (citing *Univ. of Tex. SW. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Count V of the Third Complaint fails to allege the requisite "but-for" causation between his ADA lawsuit against TJU and UCF's rejection of his medical school application. Count V alleges that UCF denied Datto's application at least twice *before* UCF was *ever informed* that he had sued TJU under the ADA and Rehab Act. (Doc. 236, ¶¶ 82-96). In *Frazier-White*, *supra*, the Eleventh Circuit held that there was no "logical inference of causation" in a retaliation claim where the plaintiff requested her ADA accommodation *after* she was notified of her dismissal. 818 F.3d at 1258. As in *Frazier-White,* that UCF rejected Plaintiff twice *before* it was made aware of his lawsuit against TJU dispels any "logical inference" that his third rejection was retaliatory.

Nothing in Count V alleges the necessary "but-for" causation. Paragraph 102 alleges that UCF's Director of Admissions, Robert A. Larkin, advised Plaintiff that he was rejected "again due solely to what happened at TJU." (Doc. 236, ¶ 102). However, paragraph 102 does *not* allege that Mr. Larkin told Plaintiff that his third application was denied because of his disability discrimination lawsuit against TJU. Rather, the allegation is simply that Plaintiff was told that his third application was rejected because of "what happened" at TJU. "What happened" at TJU was Plaintiff dismissal from medical school. (Doc. 236, ¶¶ 10-11.).

14

Paragraph 102 does not state, and does not allege, that Plaintiff's application was rejected *because* of his TJU lawsuit.

### VI. Count VI Fails to State a Claim Against the "John Doe" Defendants.

Count VI of the Third Complaint purports to state a claim against five "John Doe" defendants. As a general proposition, "fictitious-party pleading is not permitted in Federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, there is a limited exception to this rule "[w]hen the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage'". *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

As stated, Count VI purports a stated claim against five "John Doe" defendants. No meaningful allegations are set-forth regarding John Does 2 – 5. Paragraph 114 simply alleges that John Does 2 – 5 are either persons at UCF who "contributed" to retaliatory action against the Plaintiff or individuals who "report to and/or take orders from" John Doe 1. (Doc. 236, ¶ 114). Since no specific or meaningful description is provided concerning the identity of John Does 2 – 5, those allegations should be dismissed. A description of "John Doe" defendants that consists merely of a category of individuals is insufficient. *See, Smith v. Comcast Corp.*, 786 Fed. Appx. 935, 940 (11th Cir. 2019)) (Identification of "John Doe" defendants as "area supervisors" insufficient).

Count VI describes John Doe 1 as a "reviewer" who allegedly provided a "drastically different" score after finding out about Plaintiff's past litigation. (Doc. 236, ¶ 112). However, Count VI fails to properly allege a claim against John Doe 1 for much the same reasons that Count V fails to state a retaliation claim. Count VI, which incorporates paragraphs 82 – 107 of Count V, also fail to allege the requisite "but-for" causation to properly allege a retaliation claim.

Count VI fails to allege that John Doe 1 assigned plaintiff a lower score as a result of Plaintiff's TJU lawsuit. Rather, paragraph 112 simply alleges a temporal relationship between the disclosure of the TJU lawsuit in the lower score. In addition, Count VI fails to allege that the lower score assigned by John Doe 1 was the sole, or "but-for" cause of the third rejection of plaintiff's medical school application. The allegations of paragraph 112, when read in conjunction with the allegations of paragraph 106, merely indicate that John Doe 1 scored Plaintiff differently than the remaining reviewers. There are no factual allegations to support an assertion that John Doe 1: (1) changed his scoring of the Plaintiff as a result of the TJU lawsuit, or (2) that any scoring of Plaintiff by John Doe 1 was the but-for cause of Plaintiff's third rejected application.

### VII. Deference Must Be Afforded to UCF's Academic Decisions.

ADA and Rehab Act cases challenging academic decisions made by public and private universities are relatively rare. Fewer still are reported decisions involving medical education programs. The reported decisions, however, including two Supreme Court decisions, have been generally deferential of the academic decision-making process. In *Southeastern Community College v. Davis*, 442 U.S. 397 (1979), a Rehab Act claim was brought against a nursing school by a hearing-impaired applicant. In reversing a judgment for the claimant, the Supreme Court observed that the Rehab Act imposes "no requirement upon an educational institution to lower or effectuate substantial modifications of standards to accommodate a handicapped person." 442 U.S. at 413.

In *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), the Supreme Court considered a due process claim arising out of the dismissal of a student from a 6-year combined undergraduate and medical school degree program. In rendering its decision, the

Supreme Court observed that "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." 474 U.S. at 513.  The Court further observed that federal courts are not a forum "suited to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions – decisions that require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decision-making.'" *Id.* at 514. (citations omitted).  As observed by the Eleventh Circuit in *Zainulabeddin, supra,* "[w]here the purpose of an educational program is to train persons to serve their profession in customary ways, an institutions refusal to make "major accomplishments" to its program does not amount to disability-based discrimination." 749 Fed. Appx. *at* 782 (citations omitted).  *See also, Trabulsy, supra,* *4 ("In an academic setting, the [c]ollege should be granted latitude in its tenure decision . . .")

### VIII. Plaintiff's Third Complaint Fails to Allege a Claim for Compensatory Damages.

"To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1146-1147 (11th Cir. 2014) (citing *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012)).  Discriminatory intent may be established by showing the defendant was deliberately indifferent to the claimant's statutory rights.  *Liese*, 701 F.3d at 345.  However, deliberate indifference is an "exacting" standard which requires more than a showing of gross negligence.  *McCullum*, 768 F.3d at 1147. (citations omitted).  To establish deliberate indifference, the plaintiff must show that harm to a federally protected right was "substantially likely" and that the defendant failed to act on that likelihood. *Id.* (citations omitted).

17

A complaint for compensatory damages should be dismissed where, as here, the plaintiff fails to allege discriminatory intent or deliberate indifference. *See, Gil v. City of Pensacola*, 396 F. Supp. 3d 1059, 1063, n.9 (N.D. Fla. 2019) ("Plaintiff's claim for compensatory damages cannot go forward either because Plaintiff did not – and in good faith likely cannot . . . adequately allege that the City violated his rights under the ADA or Rehabilitation Act with discriminatory intent or with deliberate indifference to his statutory rights.") (citations omitted).

In *Price v. Town of Longboat Key*, 2019 W.L. 217834 (N.D. Fla. 2019), the Court dismissed a claim for compensatory damages under the ADA where the complaint failed to allege the requisite discriminatory intent or deliberate indifference. The *Price* court observed that "[a]part from conclusory language, Plaintiff does not establish that the Defendant knew that portions of its website at issue would be inaccessible to disabled individuals, or that Defendant knew such inaccessibility would infringe upon a federally protected right." *Id.* at *5. With regard to the "website accessibility" at issue in *Price*, the Court observed that "not even the courts are entirely in accord on the matter." *Id.*

The gravamen of Plaintiff's action is that UCF's rejection of an applicant with admittedly recurrent, debilitating, manic/depressive episodes constitutes a violation of the ADA and Rehab Act. No known precedent supports Plaintiff's position. If the Court in *Price* refused to infer discriminatory intent or deliberate indifference due to conflicting judicial decisions, no inference of discriminatory intent or deliberate indifference should be drawn here. If conflicting precedents and uncertainty in the law regarding website accessibility precludes a claim for compensatory damages, how much more tenuous is Plaintiff's compensatory damage claim where, as here, there is no clear precedence supporting his claim. Since the Third Complaint is

completely devoid of any allegation of discriminatory intent or deliberate indifference, whether conclusory or otherwise, the claim for compensatory damages should be dismissed.

It should also be noted that certain elements of elements of Datto's compensatory damage claim are clearly inapposite including the claims for "back-pay" and "front-pay" (Doc. 236, ¶ 117). In addition, the prayer for relief also includes a claim for loss of Uber income due to the "time devoted towards litigation" and a "reasonable attorney [sic] fees if/when Plaintiff retains counsel. *Id.* A pro se litigant is not allowed to recover attorney's fees unless the litigant is also an attorney. *Gonzalez v. Asset Acceptance, LLC,* 2008 WL 1930625, *3 (M.D. Fla. 2008) *citing Barrett v. Bureau of Customs,* 651 F. 2d 1087, 1088-89 (5th Cir. 1981).

## CONCLUSION

For the foregoing reasons, Defendant, UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, respectfully requests this Court to enter an order dismissing Plaintiff's Third Complaint with prejudice. A pro se pleading may be dismissed with prejudice after the litigant is afforded an opportunity to amend and it is explained how and why their pleadings do not satisfy the federal rules. *Kabbaj v. Obama*, 568 Fed. Appx. 875, 880 (11th Cir. 2014) (citing *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). Here, Plaintiff has filed three complaints against UCF (Doc. 62, 210,236) and been instructed twice by the Court regarding the requirements of a proper complaint. (Doc. 168, 169). Dismissal with prejudice is proper.

...

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by Electronic Service through the Florida E-Portal System to: Jeffrey Peter Datto, Ph.D., 3352 W. 98th Place, Hialeah, FL  33018; jpdatto@gmail.com, on this 2nd day of April, 2020.

/s/ Ronald L. Harrop
RONALD L. HARROP, ESQUIRE
Florida Bar Number:  260584
rharrop@oconlaw.com
O'CONNOR & O'CONNOR, LLC
800 North Magnolia Avenue, Ste 1350
Orlando, FL  32803
(407) 843-2100
(407) 843-2061 Facsimile
*Attorney for Defendant University of Central Florida Board of Trustees*